# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1236

_____

Fond du Lac Band of Lake Superior   *
Chippewa,   *
  *
   Plaintiff - Appellant,   *
  *   Appeal from the United States
   v.   *   District Court for the
  *   District of Minnesota.
Myron Frans,[1] in his official capacity   *
as the Commissioner of the Minnesota   *
Department of Revenue,   *
  *
   Defendant - Appellee.   *

_____

Submitted: November 18, 2010
Filed: August 12, 2011

_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

   The Fond du Lac Band of Lake Superior Chippewa ("Band") sued the Commissioner of the Minnesota Department of Revenue to prevent taxation of the out-of-state pension income of Band members. The Band advances two arguments

_____

   [1] Myron Frans has been substituted for his predecessors under Fed. R. App. P. 43(c)(2).

against the taxation:  due process and preemption.  The district court[2] ruled for the Commissioner.  Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

The federally-recognized Band occupies a reservation created by the Treaty of LaPointe, 10 Stat. 1109 (1854), which predates the State of Minnesota.  Minnesota taxes the entire net income of its residents.  *See* **Minn. Stat. 290.014, subd. 1**.  The state taxed a Band member's pension earned in Ohio but received on the reservation, and the Band sued to enjoin taxation of the out-of-state income of reservation-residing members.[3]  The district court denied the Band's Motion for Summary Judgment, and upheld the taxation.  The sole issue having been decided, the Band stipulated to judgment for the Commissioner and now appeals.

The district court's decision receives de novo review.  *See* ***Kessler v. Nat'l Enters., Inc.***, 238 F.3d 1006, 1011 (8th Cir. 2001) ("The district court granted summary judgment after the case was submitted to it on a stipulated record without trial.  Therefore, de novo is the proper standard of review.").

The Band argues that the taxation violates due process.  *See* **U.S. Const. amend. XIV, § 1**.  "The Due Process Clause 'requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.'"  ***Quill Corp. v. North Dakota***, 504 U.S. 298, 306 (1992), *quoting* ***Miller Bros. Co. v. Maryland***, 347 U.S. 340, 344-45 (1954).  "'[I]ncome attributed to the State for tax purposes must be rationally related to values connected with the taxing

---

[2] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

[3] The Tax Injunction Act, 28 U.S.C. § 1341, does not bar the Band's suit.  *See* ***Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation***, 425 U.S. 463, 474-75 (1976).

-2-

State.'" ***Id.***, *quoting **Moorman Mfg. Co. v. Bair***, 437 U.S. 267, 273 (1978) (further marks omitted). The Supreme Court has recognized that:

> domicile or residence, more substantial than mere presence in transit or sojourn, is an adequate basis for taxation, including income, property, and death taxes. Since the Fourteenth Amendment makes one a citizen of the state wherein he resides, the fact of residence creates universally reciprocal duties of protection by the state and of allegiance and support by the citizen. The latter obviously includes a duty to pay taxes . . . .

***Miller Bros. Co.***, 347 U.S. at 345 (footnotes omitted).


The Band urges that its right to occupy the reservation comes from the 1854 Treaty, rather than the state. Even if Congress may have originally recognized Band members' residency rights separate from any state or territory, *see United States v. Thomas*, 151 U.S. 577, 582-85 (1894), Congress later altered the landscape. In 1868, the Fourteenth Amendment established, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." **U.S. Const. amend. XIV, § 1**.[4] In 1924, Congress conferred citizenship on all Native Americans born in the United States. **Act of June 2, 1924, ch. 233, 43 Stat. 253**, *current version codified as* **8 U.S.C. § 1401(b)**. Band members living on the reservation now hold full Minnesota citizenship. *See **Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake, Minn.***, 771 F.2d 1153, 1156 (8th Cir. 1985). *See also **Goodluck v. Apache County***, 417 F. Supp. 13, 16 (D. Ariz. 1975), *aff'd sub nom.* ***Apache County v. United States***, 429 U.S. 876 (1976) (mem.).

---

[4] As the dissent notes, the Fourteenth Amendment mentions "Indians not taxed." *See **infra*** at 9, *citing* **U.S. Const. amend. XIV, § 2**. This phrase concerns who is counted for purposes of Congressional apportionment. *See **Lazore v. Comm'r***, 11 F.3d 1180, 1188 (3d Cir. 1993).

A proviso to the 1924 Act states that "the granting of such citizenship shall not in any manner impair or otherwise affect the right of any Indian to tribal or other property." **Act of June 2, 1924, ch. 233, 43 Stat. 253**, *current version codified as* **8 U.S.C. § 1401(b)**. In the dissent's view, this "decoupled Indians' taxation status from their citizenship." *Infra* at 9. The history of Native American citizenship reveals a different Congressional intent. Some prior naturalization laws had required Native Americans to abandon their tribal connections. *See, e.g., **Elk v. Wilkins***, 112 U.S. 94, 105 (1884); ***Oakes v. United States***, 172 F. 305, 308 (8th Cir. 1909). "Originally, the test of the right of individual Indians to share in tribal lands, like the Chippewa reservations in Minnesota, was existing membership in the tribe, and this was true of all tribal property." *Id.* at 307. The inclusion of tribal property provisos in citizenship laws showed "a settled and persistent purpose on the part of Congress so to broaden the original rule respecting the right to share in tribal property as to place individual Indians who have abandoned tribal relations . . . upon the same footing, in that regard, as though they had maintained their tribal relations." *Id.* at 308-09. In becoming United States and Minnesota citizens, Band members kept their pre-existing right to tribal and other property. The proviso does not create a tax exemption.

Because citizenship provides a constitutional nexus, Minnesota's taxation complies with due process.

The taxation must clear a second barrier. Federal law generally provides for "tax immunity of reservation Indians . . . premised on the preemption of state laws by treaty and statute and informed by notions of tribal self government." ***United States ex rel. Cheyenne River Sioux Tribe v. South Dakota***, 105 F.3d 1552, 1559 (8th Cir. 1997). Absent Congressional authorization, a state may not "tax a reservation Indian for income earned exclusively on the reservation." ***McClanahan v. Ariz. State Tax Comm'n***, 411 U.S. 164, 168 (1973). However: "Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the state." ***Mescalero Apache Tribe v. Jones***, 411 U.S. 145, 148-49 (1973) (citations

omitted). The Band does not identify any specific federal statute preempting the taxation of pensions. *Cf.* **4 U.S.C. § 114(a)** ("No State may impose an income tax on any retirement income of an individual who is not a resident or domiciliary of such State (as determined under the laws of such State).")

The facts here lie between *McClanahan*, involving only on-reservation activity, and *Mescalero Apache Tribe*, involving operation of a ski resort within the taxing state but off the reservation. *See **McClanahan***, 411 U.S. at 165-66; ***Mescalero Apache Tribe***, 411 U.S. at 146. *McClanahan* limits itself, referring to *Mescalero Apache Tribe* as governing taxation of off-reservation activity:

> Nor, finally, is this a case where the State seeks to reach activity undertaken by reservation Indians on nonreservation lands. See, *e. g.*, *Mescalero Apache Tribe* v. *Jones*, *ante*, p. 145. Rather, this case involves the narrow question whether the State may tax a reservation Indian for income earned exclusively on the reservation.

***McClanahan***, 411 U.S. at 168. *See also **Okla. Tax Comm'n v. Chickasaw Nation***, 515 U.S. 450, 464 (1995) ("the rule that Indians and Indian tribes are generally immune from state taxation, *McClanahan* v. *Arizona Tax Comm'n*, . . . does not operate outside Indian country"), *citing **Okla. Tax Comm'n v. Sac & Fox Nation***, 508 U.S. 114, 123-26 (1993).[5]

---

[5] The dissent emphasizes this court's observation that reservation-residing Native Americans are not subject to "municipal civil regulatory control." ***Shakopee Mdewakanton Sioux Cmty.***, 771 F.2d at 1157, *citing **Bryan v. Itasca County, Minn.***, 426 U.S. 373, 388 (1976) (reservation Native Americans are not subject to "the full panoply of civil regulatory powers . . . of state and local governments") (footnote omitted). As *Shakopee Mdewakanton Sioux Community*'s principal authority states, "*McClanahan* held that Arizona was disabled in the absence of congressional consent from imposing a state income tax on the income of a reservation Indian earned solely on the reservation." ***Bryan***, 426 U.S. at 377. This confirms the general rule that Native Americans receiving off-reservation income are subject to non-discriminatory state taxation. *See **Mescalero Apache Tribe***, 411 U.S. at 148-49.

The Band attempts to confine *Mescalero Apache Tribe*'s principle of taxability, emphasizing that the ski resort there, while off-reservation, had a nexus with the taxing state. Yet "'[f]ederal courts . . . are not free to limit Supreme Court opinions precisely to the facts of each case. Instead, federal courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings . . . .'" **Jones v. St. Paul Cos.**, 495 F.3d 888, 893 (8th Cir. 2007), *quoting* **City of Timber Lake v. Cheyenne River Sioux Tribe**, 10 F.3d 554, 557 (8th Cir. 1993) (further quotation marks and citations omitted).

The dissent reads *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751 (1998), as narrowing *Mescalero Apache Tribe*. *See* **infra** at 11-12. In passing, *Kiowa Tribe* states the holding of *Mescalero Apache Tribe* as: "a State may have authority to tax or regulate tribal activities occurring within the State but outside Indian country." **Kiowa Tribe**, 523 U.S. at 755, *citing* **Mescalero Apache Tribe**, 411 U.S. at 148-49; **Organized Vill. of Kake v. Egan**, 369 U.S. 60, 75 (1962). However, applying *Mescalero Apache Tribe* to narrower contexts does not limit its application to broader ones. The *Kiowa Tribe* opinion does not disclaim or qualify the principle of *Mescalero Apache Tribe*, and this court may not read between the lines in an attempt to do so. *See generally* **Rodriguez de Quijas v. Shearson/Am. Express, Inc.**, 490 U.S. 477, 484 (1989) ("the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions").

The dissent also cites an Indian law treatise's conclusion that "a state may not collect income tax from tribal members who reside in Indian country but earn income outside the state's boundaries." **Infra** at 12, *citing* **Cohen's Handbook of Federal Indian Law § 8.03[1][b], p. 695** (Neil Jessup Newton et al. eds., 2005). The treatise relies on *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Zeuske*, 145 F. Supp. 2d 969 (W.D. Wis. 2000). *See* **id.** **n.207**. The *Lac du Flambeau Band* case dealt with a Wisconsin reservation resident earning out-of-state income. **Lac du Flambeau Band**, 145 F. Supp. 2d at 971-72. The district court there held that

"Congress has never authorized the states to tax tribal members living on reservations," and "the state cannot use as a reason to tax a residence that it has not provided." *Id.* at 976-77. *Mescalero Apache Tribe* works from the opposite premise: "Absent express federal law to the contrary," states may tax off-reservation income. *Mescalero Apache Tribe*, 411 U.S. at 148-49 (citations omitted). To the extent *Lac du Flambeau Band* rests on due process grounds, state citizenship suffices in light of the Fourteenth Amendment and the 1924 Act.

In this case, Minnesota is taxing income from outside Indian country. The *McClanahan* rule applies only to a limited category of income, variously described as "wholly from reservation sources," "earned exclusively on the reservation," and "generated on reservation lands." *McClanahan*, 411 U.S. at 165, 168, 181. This case is controlled by the general rule: "Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the state." *See Mescalero Apache Tribe*, 411 U.S. at 148-49 (citations omitted). Minnesota's taxation is not preempted.

\* \* \* \* \* \* \*

The judgment of the district court is affirmed.

MURPHY, Circuit Judge, dissenting.

I respectfully dissent, for the majority has failed to give full consideration to all relevant Supreme Court precedent and other authority which supports the Band's position in this case.

Charles Diver, the subject of the Band's case, was born on the Fond du Lac Reservation in a hospital administered by the Bureau of Indian Affairs. Diver moved to Ohio in 1960 under the federal Indian relocation program. That program was part

-7-

of an era of federal Indian policy which terminated recognition of certain tribes and "progressively decreased" Indian programs other than relocating individual Indians off reservations. F. Cohen, Handbook of Federal Indian Law, § 1.06, pp. 91–92 (2005). Many tribal members "were pressured to . . . relocate to urban areas." Sioux Tribe of Indians v. United States, 7 Cl. Ct. 468, 477 n.8 (1985).

Although many Indians who relocated lived in poverty and isolation, Cohen, § 1.06, p. 93, Diver found work in Ohio as a dockworker. He worked there for thirty years, earning a pension through a union plan based in Illinois. Upon retirement in 1998, Diver returned to the Fond du Lac Reservation where he still lives. It does not appear that Diver has ever worked in Minnesota or lived anywhere in the state other than the reservation. Nevertheless, he paid Minnesota taxes on his pension for ten years before the Band brought this action on his behalf. The Band asserts that Minnesota lacks authority to tax Diver's pension income generated by his thirty years of labor in Ohio.

While citing general principles permitting taxation of state residents consistent with due process and of income earned by Indians working outside the reservation but within the state, the majority overlooks significant limitations to those principles when a state's right to tax conflicts with recognized rights of Indian citizens. It acknowledges that "Congress may have originally recognized [Fond du Lac] Band members' residency rights separate from any state or territory." Congress certainly did so, since it set aside land for the tribe's use four years before approving statehood for Minnesota. See Treaty with the Chippewa, 10 Stat. 1109 (1854); Minnesota Enabling Act, 11 Stat. 285 (1858). Unlike other Minnesota citizens, Band members' rights of occupancy derive from that treaty, not from the state. United States v. Thomas, 151 U.S. 577, 582–85 (1894).

Tribal members living on the reservation are United States citizens. In extending citizenship broadly, the Fourteenth Amendment excluded only "Indians not taxed," U.S. Const. amend. XIV, § 2; Goodluck v. Apache County, 417 F. Supp. 13,

15 (D. Ariz. 1975), aff'd, 429 U.S. 876 (1976). Congress extended citizenship to all Indians in 1924, including those taxed, but included an important caveat which is significant here:

> The following shall be nationals and citizens of the United States at birth: . . . a person born in the United States to a member of an Indian . . . tribe: <u>Provided</u>, That the granting of citizenship shall not in any manner impair or otherwise affect the right of such person to tribal or other property.

8 U.S.C. § 1401(b).

The majority concludes that § 1401(b) "altered the landscape" to create a constitutional nexus between state taxation and reservation Indians, but "conferring rights and privileges on . . . Indians cannot affect their [taxation] situation, which can only be changed by treaty stipulation, or a voluntary abandonment of their tribal organization." <u>McClanahan v. State Tax Comm'n of Ariz.</u>, 411 U.S. 164, 173 n.12 (internal punctuation omitted). Section 1401(b) in fact decoupled Indians' taxation status from their citizenship, and a state may not deny an on reservation tribal member voting rights and equal protection even if that member does not pay state taxes. <u>Goodluck</u>, 417 F. Supp. at 16. Issued by a three judge panel and summarily affirmed by the Supreme Court, <u>Goodluck</u> undermines the majority's position because it held that Congress could and did extend citizenship to Indians without increasing states' ability to tax them. <u>Id.</u>

In citing <u>Shakopee Mdewakanton Sioux Community v. City of Prior Lake, Minnesota</u>, 771 F.2d 1153, 1156 (8th Cir. 1985), for the proposition that "[b]and members living on the reservation now hold full Minnesota citizenship," the majority opinion conflicts with significant aspects of that decision. In that case we rejected the attempt by the city of Prior Lake to reverse its annexation of the Shakopee reservation and to exclude reservation residents from municipal elections and services. <u>Id.</u> at 1159. We confirmed that Shakopee reservation "residents would be entitled to the

benefits of citizenship in Prior Lake" even though the city could not "subject Reservation residents to municipal taxes or ordinances." Id. at 1157, 1159. Any failing to distinguish between the protections and the obligations of citizenship is not consistent with the principles enunciated in Shakopee and in Goodluck.

The Supreme Court has not directly defined what nexus would allow state taxation of a tribal member living on a reservation in order to comply with due process. The Court has indicated, however, that more of a nexus is required for taxing such tribal members than for taxing non Indians or for off reservation Indians. For example, the Court has held that a state may tax on reservation cigarette purchases by non tribal members, Washington v. Confederated Tribes of the Colville Indian Reservation, 447 U.S. 134, 159 (1980), but not by tribal members, Moe v. Confederated Salish & Kootenai Tribes, 425 U.S. 463, 477 (1976), even though those members are state citizens.

Justice Rehnquist wrote separately in Colville, pointing out that the state's attempt to tax on reservation sales raised issues of "not only Indian sovereignty, but also necessarily state sovereignty." 447 U.S. at 181. He concluded that "the State, by taxing its own non-Indian residents, has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred." Id. at 182 (emphasis added and internal punctuation omitted). He did not claim that due process allows state taxation of reservation tribal members, who frequently receive opportunities, protection, and benefits from tribal and federal entities rather than state governments. Throughout Diver's Minnesota citizenship, he has been an on reservation member of a tribe that today operates its own schools, transit system, public health and housing services. See www.fdlrez.com (website of the Fond du Lac tribal government). The majority has in effect "confused [Supreme Court] cases about state taxation of non-Indians with those about state taxation of Indians." See Okla. Tax Comm'n v. Chickasaw Nation, 515 U.S. 450, 459 n.8 (1995).

The majority's analysis of federal Indian law is incomplete. It does recognize that "tax immunity of reservation Indians [is] . . . informed by notions of tribal self-government." United States ex rel. Cheyenne River Sioux Tribe v. South Dakota, 105 F.3d 1552, 1559 (8th Cir. 1997). The Court made clear in McClanahan v. State Tax Commission of Ariz., 411 U.S. 164, 167, that a state may not tax income earned on the reservation by a tribal member who lives there. And on the same day it decided Mescalero Apache Tribe v. Jones, 411 U.S. 145, 148–49, approving the taxation of income from a tribally operated ski resort located within the taxing state but outside the reservation. Although it recognizes that the facts of the Band's case "lie between" those in McClanahan and Mescalero, the majority would limit McClanahan to its facts while overlooking the significant distinction between Diver's income and that taxed in Mescalero where the tribe was operating a lucrative business off the reservation but within the taxing state.

There is no indication from the Supreme Court that it would apply Mescalero to out of state activity. In fact, Kiowa Tribe v. Manufacturing Technologies, Inc., 523 U.S. 751 (1998), cited Mescalero for the principle that a state "may tax . . . tribal activities occurring within the State but outside Indian country" (emphasis added). In the case before our court the majority states that we "are bound by the Supreme Court's considered dicta almost as firmly as [its] outright holdings," Jones v. St. Paul Cos., 495 F.3d 888, 893 (8th Cir. 2007), yet it dismisses Kiowa Tribe's on point characterization of Mescalero. In Kiowa Tribe the Court explicitly characterized Mescalero as applying to within state activity. No published case has applied Mescalero in any other context. Nevertheless, the majority suggests that Mescalero "directly controls" here despite having acknowledged that our case "lie[s] between" Mescalero and McClanahan.

One federal court has previously decided almost the exact issue before us. It ruled in favor of the Lac du Flambeau Band after fully considering the applicable precedent. Lac du Flambeau Band of Lake Superior Chippewa Indians v. Zeuske, 145 F. Supp. 2d 969 (W.D. Wis. 2000). In Zeuske, Wisconsin attempted to tax the income

-11-

of a tribal member who lived on a reservation within the state but who earned his income from work in Minnesota. The district court observed that the Supreme Court had "categorical[ly]" rejected taxes whose legal incidence falls on tribal members living on the reservation absent explicit Congressional authorization. Id. at 976 (citing Chickasaw Nation, 515 U.S. at 459). In Chickasaw Nation, the Court "accord[ed] due deference to the lead role of Congress in evaluating state taxation as it bears on Indian tribes and tribal members." 515 U.S. at 459. Since Congress had not authorized the tax Wisconsin imposed, the court enjoined its collection. Id. at 977. The state did not appeal. The Zeuske court did what should be done here, for it considered how due process tax doctrine and federal Indian law interact rather than viewing each in isolation. In its ongoing review of developments in Indian law, the leading treatise endorsed the reasoning and conclusions of the Zeuske court. Cohen, § 8.03[1][b], p. 695. The majority rejects both in favor of an overbroad application of Mescalero.

When due process and tribal sovereignty principles are considered together, the weakness in Minnesota's position becomes clear. Diver has never earned income while working off the reservation as a citizen of Minnesota. His pension was earned entirely in the state of Ohio, where he lived and worked for thirty years. Minnesota could not have taxed his wages as he received them because the state did not have the required nexus. Now that Diver has retired and returned to the Fond du Lac reservation, tribal sovereignty precludes Minnesota from imposing a tax on a pension earned during thirty years of work in Ohio. Just as Minnesota could not tax Diver's preretirement Ohio wages simply because he now resides on a reservation located in the state, the same is true for the pension tied to those wages. His situation is not at all similar to that in Mescalero, where Indians were taxed on income generated by an off the reservation ski resort they ran within the state. 411 U.S. at 146. There, the resort's operation was earning income for the Indians from a business based in that state. Here, Diver's pension funds earned in Ohio are directed to him from Illinois for his retirement on the Fond du Lac Reservation.

For the foregoing reasons I dissent.

_____

-12-