Leslie E. GOODLUCK et al., Plaintiffs,

v.

APACHE COUNTY et al., Defendants.

APACHE COUNTY et al.,
Counterclaimants,

v.

Leslie E. GOODLUCK et al.,
Counterdefendants,

William B. Saxbe, as Attorney General of the United States, et al., Additional Defendants on Counterclaim.

UNITED STATES of America, Plaintiff,

v.

STATE OF ARIZONA et al., Defendants.

Nos. Civ. 73–626 PCT (WEC), 74–50 PCT (WEC).

United States District Court,
D. Arizona.

Sept. 16, 1975.

Richard B. Collins and Alan R. Taradash, Window Rock, Ariz., for plaintiffs.

Rogert A. Schwartz and James A. Sehermerhort, Civ.Rights Div., Dept. of Justice, Washington, D. C., for the United States.

Frank Sagarino, Asst. Atty. Gen., Phoenix, Ariz., for Ariz. Atty. Gen.

Platt & Platt, J. Kendall Hansen, Apache County Atty., St. Johns, Ariz., for Apache County, Margaret Lee, Tom Shirle, Arthur N. Lee, Larry Stradling and James A. McDonald as Clerk and Members of the Apache County Board of Supervisors.

OPINION AND JUDGMENT

Before TRASK, Circuit Judge, and CRAIG and COPPLE, District Judges.

**14**

CRAIG, District Judge.

The above entitled causes of action were consolidated for hearing cross motions for summary judgment before a three-judge court.

Plaintiffs in both actions seek injunctive relief and in Cause No. Civ. 73–626, plaintiffs also seek declaratory relief.

This court has jurisdiction pursuant to Title 28, U.S.C. §§ 2281 and 2282. This court has subject matter jurisdiction, pursuant to Title 28, U.S.C. §§ 1343, 1345, 2201 and Title 42 U.S.C. §§ 1971(d), 1973j(f), 1981, and 1983.

Apache County is a political and geographical subdivision of the state of Arizona. It is governed by a Board of Supervisors, which exercises general governmental authority in the county, including the authority to define the territorial limits of supervisorial districts within the county. There have been established by appropriate action, three supervisorial districts. Each district is represented by one supervisor, who exercises one vote. The districts are numerically designated as 1, 2 and 3.

The United States census for 1970 discloses the following approximate population distribution among the three districts within the county: District 1, 1,700; District 2, 3,900; District 3, 26,700.

Most of District 3 includes within its boundaries, that portion of the Navajo Indian Reservation, lying within Apache County. Of the total population within District 3, 23,600 are Indian. Of the total population within District 2, 300 are Indian. Of the total population of District 1, 70 are Indian.

Very little property taxable by Apache County is owned by Indians or is owned by the Navajo tribe.

Plaintiffs assert:

1. The apportionment described herein constitutes a denial of equal protection of the laws of the state of Arizona and the Fourteenth Amendment to the Constitution of the United States and is in violation of Title 42, U.S.C. §§ 1981 and 1983.

2. The apportionment described herein constitutes an abridgement or denial of the right to vote on account of race or color in violation of the Fifteenth Amendment to the Constitution of the United States and is in violation of the Voting Rights Act of 1965, 42 U.S.C. § 1973.

3. The apportionment described herein constitutes a distinction by race in the exercise of the Right to Vote in violation of 42 U.S.C. § 1971(a)(1).

4. The apportionment described herein constitutes a racially discriminatory application of the voting laws of Arizona in violation of 42 U.S.C. § 1971(a)(2)A.

Defendants assert:

1. 8 U.S.C. § 1401(a)(2) is an unconstitutional attempt to make reservation Indians citizens of the United States.

2. The immunity from taxes bars Indians from the right to vote under the Fifth and Fourteenth Amendments to the Constitution of the United States.

3. By way of counterclaim, defendants assert the Indians are not citizens under the Constitution and laws of the United States entitling them to vote.

Defendants raise other issues not pertinent to the disposition of these cases.

The primary issue which would appear to be dispositive of the cases before us is whether 8 U.S.C. § 1401(a)(2) is constitutional.

8 U.S.C. § 1401 provides:

"(a) The following shall be nationals and citizens of the United States at birth:

(1) a person born in the United States, and subject to the jurisdiction thereof;

(2) a person born in the United States to a member of an Indian, Eskimo, Aleutian, or other aboriginal tribe: *Provided,* That the granting of citizenship under this subsection shall not in any manner impair or otherwise affect the right of such person to tribal or other property: * * * "

The Fourteenth Amendment to the Constitution of the United States provides in pertinent part, "All persons born or natu-

ralized in the United States, and subject to the jurisdiction thereof, are citizens of the United States *and of the State wherein they reside.*" (Emphasis supplied).

In the *Slaughter House Cases,* 16 Wall. (83 U.S.) 36, 21 L.Ed. 394 (1873), both the majority and dissenting opinions recognized the derivative nature of the right to state citizenship. It was most aptly stated by Mr. Justice Bradley in his dissenting opinion: "The question is now settled by the Fourteenth Amendment itself, that citizenship of the United States is the primary citizenship in this country, and that state citizenship is secondary and derivative, depending upon citizenship of the United States and the citizen's place of residence. The states have not now, if they ever had, any power to restrict their citizenship to any classes or persons." *Id.* at 112.

That the Indians here involved are residents of Arizona is of little doubt. *See Harrison v. Laveen,* 67 Ariz. 337, 196 P.2d 456; *Shirley v. Superior Court,* 109 Ariz. 510, 513 P.2d 939.

The basis of defendants' argument is primarily founded on the case of *Elk v. Wilkins,* 112 U.S. 94, 5 S.Ct. 41, 28 L.Ed. 643 (1884), wherein the court analyzed §§ 1 and 2 of the Fourteenth Amendment and held that a reservation Indian is not a citizen of the United States. *Elk* was an action filed by an emancipated Indian against the registrar of one of the wards of the city of Omaha for refusing to register him as a qualified voter.

The court first held that the clause "subject to the jurisdiction thereof" found in the first paragraph of the Fourteenth Amendment meant completely subject to the jurisdiction and owing direct and immediate allegiance. The court then found that Indians born within the territorial limits of the United States owed immediate allegiance to their tribe first. The court supported this conclusion by looking at the second section of the Fourteenth Amendment which states "Representatives shall be apportioned among the several states according to their respective numbers, counting the whole number of persons in each State, *excluding Indians not taxed.*" (Emphasis added). This absolute exclusion from the basis of representation was found to be wholly inconsistent with the concept of citizenship. *Id.* at 102, 5 S.Ct. 41.

Defendants contend that under *Elk* the reservation Indian is not a citizen because at the time of the passage of 8 U.S.C. § 1401 the reservation was still not subject to the jurisdiction of the United States and that they were still not taxed by the states.

In 8 U.S.C. § 1401, the words "subject to the jurisdiction thereof" are not found in subsection (a)(2) as it is in (a)(1).

Defendants argue that as a result of this omission, Indians need not be subject to the jurisdiction of the United States. The Fourteenth Amendment provides for only two ways of becoming a citizen, birth or naturalization, and in both cases the person being made a citizen must be subject to the jurisdiction of the United States.

The *Slaughter House Cases,* supra, made it clear that this clause did refer only to the jurisdiction of the United States and did not require subjection to the jurisdiction of a state. 16 Wall. at 73–74.

A more recent Supreme Court decision has analyzed the clause under consideration and after mentioning *Elk,* concluded that the clause is equivalent of the words "within the limits and under the jurisdiction of the United States". *U. S. v. Wong Kim Ark,* 169 U.S. 649, 687, 18 S.Ct. 456, 471, 42 L.Ed. 890 (1898). The court reasoned in that case that this interpretation was correct due to a change in wording which was implemented when the Civil Rights Act of 1866 was reenacted as the Fourteenth Amendment. The wording was changed from "not subject to any foreign power" to the current wording. By statutory proclamation, it is clear that Congress at the time of *Elk* and *Wong Kim Ark* did not regard the Indian tribes as foreign powers. 16 Stat. 566 provided that "no Indian nation or tribe within the territory of the United States shall be acknowledged or recognized as an independent nation, tribe or power with whom the United States may contract by treaty * * *" 25 U.S.C. § 71 (1871).

The issue here is not so much whether the enactment of 8 U.S.C. § 1401 by the Congress was wise or good public policy, but rather whether Congress had the constitutional authority to so legislate. *See U. S. v. Rogers,* 4 How. (45 U.S.) 567 at 572, 11 L.Ed. 1105.

When a party is subject to the plenary power of another party, that first party is subject to the jurisdiction (complete and immediate) of the second party. Congress' power over the Indian tribes is plenary. *Worcester v. Georgia,* 6 Pet. (31 U.S.) 515, 8 L.Ed. 483 (1834); *McClanaghan v. Arizona State Tax Comm.,* 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973). *See also, Morton v. Mancari,* 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974).

The phrase "not taxed" as used in the second section of the Fourteenth Amendment is an historical anomaly which is of no relevance today. From an historical viewpoint, it is clear that this phrase was synonymous with the granting of citizenship. Inferring from the wording of the Amendment, one can presume that an Indian who was taxed was eligible to be counted for representation purposes. Therefore, taxation was the equivalent to being considered a citizen.

Nowhere does the Constitution define the requirements necessary for citizenship. *See Wong Kim Ark,* supra 18 S.Ct. at 459. The granting of citizenship by Congress in 8 U.S.C. § 1401 recognizes that the Indian now is subject to federal jurisdiction and many federal taxes. It is much too strict a reading of the Constitution to require subjection to state taxes before citizenship may be granted.

The court in *Elk* recognized the trend of national legislation toward the education and civilization of the Indians in an attempt to prepare them for citizenship. *Elk, supra* 112 U.S. at 106–107, 5 S.Ct. 41. The court further recognized that it would take an act of Congress to implement this goal. *Id.* 112 U.S. at 103, 5 S.Ct. 41. The Congress did just this when it enacted 8 U.S.C. § 1401(a)(2).

Since Congress did act constitutionally in granting citizenship to the reservation Indians, and since, under the Fourteenth Amendment, the Indians are also citizens of Arizona, and since the Arizona Constitution allows the Indians to vote, the defendants' equal protection and due process arguments appear to be premature for adjudication.

Defendants assert that due to the Indian Civil Rights Act, 25 U.S.C. § 1322(a), the state may assume jurisdiction over the Indian tribes only if the tribe consents. Defendants contend that due to their preferred status, the Indians would never consent.

Defendants ignore the fact that the State of Arizona could have unilaterally assumed jurisdiction over the tribe at any time between 1953 and 1968 at which time the act was passed. 67 Stat. 590 (1953) granted the states authority to assume jurisdiction even though the state's enabling statute was to the contrary. The court in *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), was probably correct when the court assumed that the people of Arizona concluded that the burdens accompanying this assumption might be considerable. *Id.* at pp. 222–23, 79 S.Ct. 269.

From the record presently before us, it is clear that a malapportionment of supervisorial districts is present. It therefore appears that Apache County Arizona must be redistricted so that the apportionment may conform to the standards dictated in *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); and *Avery v. Midland County,* 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968).

WHEREFORE, IT IS ORDERED ADJUDGED AND DECREED that the plaintiffs' Motions for Summary Judgment are granted and the defendants' Motions are denied.