**LAC DU FLAMBEAU BAND OF LAKE SUPERIOR CHIPPEWA INDIANS, Plaintiff,**

v.

**Cate S. ZEUSKE, Secretary of the Wisconsin Department of Revenue, Defendant.**

**No. 00–C–0113–C.**

United States District Court, W.D. Wisconsin.

Sept. 8, 2000.

Brian L. Pierson, Von Briesen, Purtell & Roper, S.C., Milwaukee, WI, for Plaintiff.

F. Thomas Creeron, Assistant Attorney General, Madison, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

This is an action for injunctive and declaratory relief brought pursuant to 28 U.S.C. §§ 1302, 1331 and 1362, in which plaintiff Lac du Flambeau Band of Lake Superior Chippewa Indians seeks an order enjoining defendant Cate S. Zeuske from imposing an income tax upon any member of the plaintiff tribe whose permanent resi-

dence is the tribe's reservation and whose income is earned beyond the territorial boundaries of the state. Plaintiff contends that the imposition of such a tax is prohibited by established principles of federal Indian law, inherent due process limitations on the state's taxing authority and plaintiff's aboriginal sovereignty.

In the original complaint, plaintiff named as an additional plaintiff the tribal member whose income tax obligation is in dispute and named the Wisconsin Department of Revenue as an additional defendant. After defendants moved to dismiss on the ground that the Tax Injunction Act, 28 U.S.C. § 1341, barred the action and that the Eleventh Amendment precluded any action against the department, plaintiffs amended their complaint to eliminate the tribal member and the department as parties, thereby mooting defendants' motion to dismiss. The case is before the court now on plaintiff's motion for summary judgment.

I conclude that both federal Indian law and the requirements of due process preclude defendant from taking any further efforts to impose or collect income taxes from tribal members who reside on the reservation and do not perform any income-producing work within the state of Wisconsin.

From the findings of fact proposed by the parties, I find that the following facts are not in dispute.

## UNDISPUTED FACTS

Plaintiff Lac du Flambeau Band of Lake Superior Chippewa Indians is a self-governing, federally recognized Indian nation that exercises sovereign authority over its members and its territory. It is a successor-in-interest to treaties between the Lake Superior Chippewa Indians and the United States of America entered into in 1837, 1842 and 1854. Plaintiff tribe occupies 92,000 acres pursuant to a treaty executed in 1854 with the United States. This reservation is located primarily within Vilas County, Wisconsin, but includes some land within Iron County, Wisconsin, as well. Plaintiff tribe performs a wide variety of governmental services and exercises broad civil regulatory authority within the reservation.

Defendant Cate S. Zeuske is Secretary of the Wisconsin Department of Revenue. In that position she is responsible for the collection of income taxes in the state of Wisconsin. The department has initiated tax enforcement proceedings against Harold Jackson, an enrolled member of plaintiff tribe, seeking to recover income taxes it alleges Jackson owes on income earned while he was employed as a truck driver outside the state during the period 1993–97.

From 1993–97, Jackson drove an 18 wheel tractor trailer cross country. In 1993 and 1994, Jackson was employed by Stan Koch and Sons Trucking, Inc., which had its truck terminal in St. Louis Park, Minnesota. In 1995, 1996 and 1997, he was employed by Single Source Transportation Co. of Des Moines, Iowa, and drove out of the company's St. Cloud, Minnesota terminal. During the tax years involved, Jackson maintained his residence on the reservation. While on the road, Jackson slept in the truck.

For the tax years at issue, Jackson had no wages from employment in Wisconsin. He used one of his automobiles or personal vehicles to drive from Wisconsin to the truck terminals in St. Louis Park or St. Cloud.

From 1993–97, Jackson's automobiles or personal vehicles and boat were titled in Wisconsin. In 1993, his automobiles or personal vehicles had Wisconsin plates. From 1994–97, they probably had Lac du Flambeau tribal plates. From 1993–97, his boat probably had Wisconsin plates.

In January 1996, Jackson filed individual income tax returns for calendar years 1993 and 1994. He filed timely federal returns for the years 1995 through 1997. On his federal returns, Jackson listed his address in 1993, 1995, 1996 and 1997 as Box 248, Lac du Flambeau, WI 54538 and his address in 1994 as Box 192, Webster, WI 54893. On his 1993–1997 W–2 forms, he listed his address in 1993, 1994, and 1995 as Box 192, Webster; in 1996, he listed it as both Box 192, Webster, and 25151 Panama Avenue, Webster, WI; in 1997, he listed it as Box 248, Lac du Flambeau. The Lac du Flambeau address is within the reservation boundaries; the Webster address is not.

In March 1996, Jackson filed a non-resident Minnesota individual income tax return for calendar year 1994. He filed timely non-resident Minnesota individual income tax returns for calendar years 1995 and 1996. All of his withheld Minnesota taxes for the years 1994–96 were returned to him with interest after he filed Minnesota returns stating that he was a resident of Wisconsin, indicating "0" as the Minnesota portion of his income and showing the handwritten notation, "Wisconsin Reciprocity."

In January 1996, Jackson filed Wisconsin individual income tax returns seeking refunds of the Wisconsin taxes withheld on his 1993 and 1994 wages on the ground that he had "[n]o Income Earned in Wisconsin." Jackson did not file a 1995 Wisconsin individual income tax return. He filed timely 1996 and 1997 individual income tax returns seeking refunds of Wisconsin taxes withheld by his employer on the ground that he was a "Resident of Lac du Flambeau and Tribal Member." On his Wisconsin individual income tax returns for 1993, 1994, 1996 and 1997, Jackson listed his address as Box 248, Lac du Flambeau.

In accordance with normal Department of Revenue practice for processing individual income tax returns, the department refunded to Jackson with interest all of the refunds claimed on his Wisconsin income tax returns for 1993, 1994, 1996 and 1997. Later, Jackson's Wisconsin income tax returns were referred for auditing, after which, on October 19, 1998, the department issued three separate individual income tax assessments in the form of Notice of Amounts due against Jackson on all of his wages for 1993, 1995 and both 1996 and 1997. On November 2, 1998, a fourth individual income tax assessment and Notice of Amount due was issued on all of Jackson's wages for 1994.

On November 16, 1998, Jackson petitioned for redetermination with the department, pursuant to Wis. Stat. § 71.88(1), in connection with all four assessments. On May 14, 1999, the department denied the petition in full. On June 22, 1999, Jackson petitioned the Wisconsin Tax Appeals Commission for review under Wis. Stat. § 73.01(5). The appeals were docketed and assigned and are pending.

## OPINION

### A. *Plaintiff's Ability to Sue*

 In order to bring an action challenging the state's authority to tax tribal members, plaintiff must show that it is seeking to vindicate rights of the tribe, rather than suing merely as a representative of Harold Jackson, an individual who seeks a refund of his state taxes. The Tax Injunction Act, 28 U.S.C. § 1341, bars individuals from suing to enjoin the collection of a tax. This statute prohibits the district courts from restraining the assessment, levy or collection of any state tax "where a plain, speedy and efficient remedy may be had in the courts of such State." It would prevent Jackson from suing in federal court on his own behalf, *see, e.g.,*

*Osceola v. Florida Dept. of Revenue*, 893 F.2d 1231 (11th Cir.1990) (only duly recognized Indian tribe can rely on 28 U.S.C. § 1362 to defeat jurisdictional bar of § 1341), and it would prevent plaintiff from suing simply as Jackson's representative, *see, e.g., White Mountain Apache Tribe v. Williams*, 810 F.2d 844, 865 n. 16 (9th Cir.1985) (Fletcher, J., dissenting) (saying that it would be inconsistent with prior decisions to allow tribes suing merely as representatives of their individual members to avoid bar of § 1341). Thus it is necessary to determine whether plaintiff has its own interest in this suit or whether its only interest is in representing Harold Jackson.

Plaintiff contends that it has the right to bring suit in federal court to enjoin improper assertions of taxing authority by states and argues that although Harold Jackson's personal circumstances were the triggering event for this lawsuit, plaintiff has sufficient interest in the subject matter to give it standing. It is suing to protect general sovereignty interests (insuring that the state does not tax tribal members solely because of their residence on the reservation) and to protect against the possibility that if it ever chooses to impose its own taxes on tribal members resident on the reservation, its tax base will not be eroded by state taxation. Either of these interests qualifies as a bona fide interest of the tribe as a tribe. *See, e.g., Oklahoma Tax Commission v. Sac and Fox Nation*, 508 U.S. 114, 120, 113 S.Ct. 1985, 124 L.Ed.2d 30 (1993) ("The Sac and Fox Nation brought this action on behalf of itself and all residents of its territorial jurisdiction ... seeking a permanent injunction barring the Commission from taxing the income of people who earn their income within Sac and Fox territory ...") *See also Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976) (Indian tribe brought action in federal court to enjoin state's cigarette sales taxes and personal property taxes as applied to reservation Indians). I conclude that plaintiff has standing in this case to assert its rights.

28 U.S.C. § 1362 gives the district courts original jurisdiction of all civil actions brought by recognized Indian tribes "wherein the controversy arises under the Constitution, laws, or treaties of the United States." The United States Supreme Court has read the statute and its legislative history as evidence of Congress's intent that Indian tribes would not be subject to the Tax Injunction Act in any circumstance in which the United States would not be subject to the act if it brought the case on behalf of the plaintiff tribe. *See Moe*, 425 U.S. at 472–75, 96 S.Ct. 1634. Because plaintiff is asserting its own rights, it may proceed under § 1362 without the impediment of § 1341.

## B. *State's Authority to Tax*

Any discussion of a state's assertion of power over an Indian tribe or its members begins with the " 'deeply rooted' " policy in this country that Indians are to be " 'free from state jurisdiction and control.' " *Oklahoma Tax Commission v. Sac and Fox Nation*, 508 U.S. at 123, 113 S.Ct. 1985 (quoting *McClanahan v. Arizona State Tax Commission*, 411 U.S. 164, 168, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973)). Although it is the usual rule that exemptions from tax laws must be clearly expressed, the tradition of Indian sovereignty requires reversal of the rule when a state tries to assert state tax jurisdiction over an Indian tribe or tribal members living and working on land set aside for them. *Id.* at 124, 113 S.Ct. 1985. "Absent explicit congressional direction to the contrary, we presume against a State's having the jurisdiction to tax within Indian country." *Id.* at 128, 113 S.Ct. 1985. *See also*

*Oklahoma Tax Commission v. Chickasaw Nation*, 515 U.S. 450, 458, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995) (Court has taken categorical approach in area of state taxation: in absence of cession of jurisdiction or other federal statutes permitting state taxation, Court has held that states are without power to tax reservation lands and reservation Indians) (citing *County of Yakima v. Confederated Tribes and Bands of Yakima Nation*, 502 U.S. 251, 258, 112 S.Ct. 683, 116 L.Ed.2d 687 (1992)). *See also Montana v. Blackfeet Tribe*, 471 U.S. 759, 764, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985) (law is well-established that Indian tribes and individuals are exempt generally from state tax within their own country).

■ This case concerns the state's authority to tax when its only nexus with the person on which it is imposing the tax is the person's residence on an Indian reservation located within the state's boundaries. It is unlike *McClanahan*, where the Indian objecting to state taxation both lived and worked on the reservation, but it is also unlike *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148–49, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973), where the question was the state's right to tax gross receipts from an Indian-run ski resort just outside the reservation boundaries. In the first case, the Supreme Court held that the state was precluded from imposing a tax, *McClanahan*, 411 U.S. at 179–80, 93 S.Ct. 1257; in the second case, it noted that "[a]bsent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State," including state tax laws, *Mescalero Apache Tribe*, 411 U.S. at 148, 93 S.Ct. 1267. Harold Jackson did not earn his income on the reservation, as McClanahan did, and he did not earn it within the state that was trying to tax him, as was the case in *Mescalero Apache Tribe*.

The two parties approach this question from very different viewpoints. Plaintiff argues that Congress has never authorized a state to collect an income tax from an Indian residing on a reservation except when the Indian has earned income off the reservation and within the state's boundaries, in which case the state's authority stems from its general authority to impose non-discriminatory taxes on persons who engage in income-earning activity within its borders. However, plaintiff continues, Wisconsin has no power to tax beyond its own borders; therefore, it cannot impose a tax on Jackson that is based on his work in Minnesota. If the state collected an income tax from Jackson, it would be basing its tax on reservation residency, something the state is prohibited from doing.

Defendant's position is that plaintiff's sovereign interests do not extend to the state taxation of tribal members who go beyond the reservation in order to earn money. In defendant's view, subjecting Jackson to income taxes because of his work in Minnesota is consistent with the application of other non-discriminatory state laws that apply to tribal members outside their reservations. Jackson went beyond reservation boundaries to earn wages and he is a resident of the state; therefore, the state can impose an income tax on him.

Defendant does not agree that Jackson' residence on the reservation exempts him from being considered a resident of the state for taxing purposes. Citing *United States v. McBratney*, 104 U.S. 621, 26 L.Ed. 869 (1881), in which the Supreme Court held that whenever Congress has intended to except an Indian reservation out of a state, it has done so by express words, defendant maintains that the entire area within the Lac du Flambeau reservation is within the boundaries of the state because none of the land on the reserva-

tion was excepted out. As proof that the reservation remains a part of the state, defendant cites the state's jurisdiction over crimes committed by non-Indians against non-Indians on the reservation and the state's authority to tax property located within a reservation that is owned by non-Indians and cigarettes bought on a reservation by non-Indians or by non-members of the tribe. Finally, she cites *Goodluck v. Apache County*, 417 F.Supp. 13 (D.Ariz. 1975), *aff'd*, 429 U.S. 876, 97 S.Ct. 225, 50 L.Ed.2d 160 (1976), for the proposition that reservation Indians are state citizens.

Left unexplained by defendant is the source of the state's authority to impose a tax upon Jackson. She simply asserts that once Indians leave their reservations to work, they are subject to taxation. Obviously, this is true, but it does not address the situation in which the off-reservation work is not performed within the state in which the reservation is located. In Jackson's case, Wisconsin has no jurisdiction over the work activity because Jackson performed it outside the state. Defendant cites no statute or case law that gives Wisconsin the authority to tax persons working in Minnesota except by virtue of their residency in Wisconsin. *See Wisconsin v. J.C. Penney Co.*, 311 U.S. 435, 444, 61 S.Ct. 246, 85 L.Ed. 267 (1940) (taxing power exerted by state must bear fiscal relation to protection, opportunities and benefits given by state).

Defendant does not confront the problem of finding the necessary authority to support the state's attempt to tax Harold Jackson. Her reference to the state's authority to exercise criminal jurisdiction over tribal members is inapposite; in Public Law 280, 18 U.S.C. § 1162 and 28 U.S.C. § 1360, Congress gave express authority to Wisconsin and certain other states to exercise criminal jurisdiction over offenses committed by or against Indians in Indian country and civil jurisdiction over causes of action arising in Indian country between Indians or in which Indians are parties. Defendant cites no statute authorizing the state to impose taxes on Indians solely because of their residency on a reservation located within the state. Her efforts to show that plaintiff's members receive benefits from the state is misguided. Similar efforts have been rebuffed by the Supreme Court. *See, e.g., Moe*, 425 U.S. at 476, 96 S.Ct. 1634 (rejecting Montana's effort to impose both personal property tax as condition to registration of cars owned by reservation Indians and sales taxes on cigarette sales made by tribal Indians to Indians residing on reservation, despite state's provision of benefits for reservation Indians, including "expenditures of state revenues for education, welfare, and other services, such as a sewer system") (citing *McClanahan*, 411 U.S. at 172–73, 93 S.Ct. 1257 ("conferring rights and privileges on these Indians cannot affect their situation, which can only be changed by treaty stipulation, or a voluntary abandonment of their tribal organization")).

By contrast, plaintiff's position is based upon established principles of federal Indian law that govern the taxation of Indian peoples and land and upon the due process clause of the United States Constitution, which requires a nexus between an activity and a state before the state can tax the activity. *See, e.g., Hunt–Wesson, Inc. v. Franchise Tax Board of California*, 528 U.S. 458, 120 S.Ct. 1022, 1026, 145 L.Ed.2d 974 (2000) ("the 'Due Process and Commerce Clauses ... do not allow a State to tax income arising out of interstate activities—even on a proportional basis—unless there is a "minimal connection" or "nexus" between the interstate activities and the taxing State'") (quoting *Container Corp. of America v. Franchise Tax Board*, 463 U.S. 159, 165–66, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983)). *See also J.C. Penney*

*Co.,* 311 U.S. at 444, 61 S.Ct. 246. Wisconsin has no nexus to the work Jackson performed in Minnesota. Therefore, it is left to the expedient of claiming Jackson's residency as a nexus, but it has no legal basis for its claim. The state may tax persons resident within its borders who do not live on reservations because it has conferred upon these persons the benefit of domicile and its accompanying privileges and advantages. It has not conferred the same benefit upon tribal members residing on reservations, however. The right of tribal members to reside on the reservation derives from treaties entered into by the tribe in the nineteenth century.

■ Defendant argues that Wisconsin's and Minnesota's reciprocity statutes are relevant. These statutes allow the residents of the other state relief from income taxes for income earned within the state to the extent that the other state provides a similar break for nonresident earners. Because of this reciprocity arrangement, Jackson was treated by Minnesota as if he were earning money and being taxed on it in Wisconsin. In fact, he even told the state of Minnesota that his wages would be subject to tax in Wisconsin. In this situation, defendant might argue, it was as if he was earning wages in Wisconsin because Minnesota has ceded its tax collection authority to Wisconsin.

The difficulty with this argument is that Wisconsin's acquisition of Minnesota's tax collection authority extends only to persons who are Wisconsin residents. *See* Minn. Stats. § 290.081(a) ("The compensation received for the performance of personal or professional services within this state by an individual who resides and has his place of abode and place to which he customarily returns once a month in another state, shall be excluded from gross income to the extent such compensation is subject to an income tax imposed by the state of his residence; provided that such state allows a similar exclusion of compensation received by residents of Minnesota for services performed therein."). Relying on the reciprocity statutes does not help the state establish an independent source of taxing authority over Jackson.

The reciprocal agreements between Minnesota and Wisconsin are only an arrangement between the states to allow another to collect taxes actually owing to the state in which the taxable employment occurred. The agreements cannot give Wisconsin a right to collect a tax from an Indian that is not authorized by federal law and they do not provide the necessary nexus that Wisconsin must have in order to impose a tax on Harold Jackson in the absence of residency.

The question plaintiff has raised is a close one. In the end, however, it is impossible to escape the conclusion that the only basis on which defendant can defend its effort to collect income taxes from Jackson is his residency. It is the only nexus Wisconsin has. But because that residency is on a reservation, the state cannot use it as a nexus. Under due process principles, the state cannot use as a reason to tax a residence that it has not provided or permitted. Under federal Indian law, the state cannot tax Jackson solely because of his residency without running afoul of the holdings in *Oklahoma Tax Commission v. Chickasaw Nation,* 515 U.S. at 458, 115 S.Ct. 2214 ("Taking this categorical approach, we have held unenforceable a number of state taxes whose legal incidence rested on a tribe or on tribal members inside Indian country."); *County of Yakima,* 502 U.S. at 258, 112 S.Ct. 683 ("State is without power to tax reservation lands and reservation Indians" absent authorizing federal statute or cession of jurisdiction); *McClanahan,* 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129

(prohibiting Arizona from imposing state tax on income earned on reservation by tribal members).

Congress has never authorized the states to tax tribal members living on reservations solely because of their residence within the taxing state; without such authorization, Wisconsin has no legal right to tax Jackson or any other tribal member similarly situated. As plaintiff points out, if residence on a reservation were equivalent to residence within a state, a state could claim authority to collect a tax merely by showing that a tribal member lived on a reservation within the state borders. If this were the law, the Supreme Court would not have barred the states of Arizona, Montana and Washington from imposing taxes on reservation Indians within their states. *See McClanahan,* 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129; *Moe,* 425 U.S. at 469, 96 S.Ct. 1634 (Montana could not impose sales taxes or property taxes upon tribal members living on reservation); *Washington v. Confederated Tribes of Colville,* 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980) (state could not impose excise tax for privilege of using car within state upon reservation members but probably could impose tax based upon use outside reservation).

Harold Jackson's particular situation is complicated from defendant's perspective by the existence of federal statutes that provide that compensation paid to an employee by interstate motor carriers is subject only to the income tax laws of the state in which the employee resides. *See* 49 U.S.C. § 14503 (effective Jan. 1, 1996) and its predecessor, 49 U.S.C. § 11504. Jackson was employed by motor carriers headquartered in Minnesota. Under federal law, his income is not subject to tax in that state because he does not reside there. It appears, therefore, that Jackson's trucking income is not subject to any state's tax. Defendant views that outcome as unacceptable. I agree that it is unfortunate. There is no intrinsic reason to shield Jackson from taxes imposed by Minnesota, the state in which he earned his income. However, the existence of special federal statutes governing the taxation of motor carrier employees does not change the basic rule of Indian law that a state cannot tax an Indian residing on a reservation solely because of his residence or the precept of due process that a state lacks the power to tax if it does not have the necessary connection to the taxed activity, which cannot be a tribal member's residence on a reservation because such a residence is not a benefit conferred by the state.

## ORDER

IT IS ORDERED that the motion for summary judgment filed by plaintiff Lac du Flambeau Band of Lake Superior Chippewa Indians is GRANTED. IT IS DECLARED that members of the plaintiff tribe are not subject to Wisconsin income tax if they live on the reservation and earn no taxable income outside the reservation boundaries and within the state of Wisconsin, where the only basis for collecting the tax is the tribal member's state residence. FURTHER, IT IS ORDERED that defendant Cate S. Zeuske is enjoined permanently from imposing and collecting Wisconsin income taxes from all such persons.

The clerk of court is directed to enter judgment for plaintiff and close this case.