BENTON, Circuit Judge.
The Fond du Lac Band of Lake Superi- or Chippewa (“Band”) sued the Commissioner of the Minnesota Department of Revenue to prevent taxation of the out-of-state pension income of Band members. The Band advances two arguments against the taxation: due process and preemption. The district court[2] ruled for the Commissioner. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.
The federally-recognized Band occupies a reservation created by the Treaty of LaPointe, 10 Stat. 1109 (1854), which predates the State of Minnesota. Minnesota taxes the entire net income of its residents. See Minn.Stat. 290.014, subd. 1. The state taxed a Band member’s pension earned in Ohio but received on the reservation, and the Band sued to enjoin taxation of the out-of-state income of reservation-residing members.[3] The district court denied the Band’s Motion for Summary Judgment, and upheld the taxation. The sole issue having been decided, the Band stipulated to judgment for the Commissioner and now appeals.
The district court’s decision receives de novo review. See Kessler v. Nat’l Enters., Inc., 238 F.3d 1006, 1011 (8th Cir.2001) (“The district court granted summary judgment after the case was submitted to it on a stipulated record without trial. Therefore, de novo is the proper standard of review.”).
The Band argues that the taxation violates due process. See U.S. Const, amend. XIY, § 1. “The Due Process Clause ‘requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.’ ” Quill Corp. v. North Dakota, 504 U.S. 298, 306, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), quoting Miller Bros. Co. v. Maryland, 347 U.S. 340, 344-45, 74 S.Ct. 535, 98 L.Ed. 744 (1954). “ ‘[I]ncome attributed to the State for tax purposes must be rationally related to values connected with the taxing State.’ ” Id., quoting Moorman Mfg. Co. v. Bair, 437 U.S. *851 267, 273, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978) (further marks omitted). The Supreme Court has recognized that:
domicile or residence, more substantial than mere presence in transit or sojourn, is an adequate basis for taxation, including income, property, and death taxes. Since the Fourteenth Amendment makes one a citizen of the state wherein he resides, the fact of residence creates universally reciprocal duties of protection by the state and of allegiance and support by the citizen. The latter obviously includes a duty to pay taxes....
Miller Bros. Co., 347 U.S. at 345, 74 S.Ct. 535 (footnotes omitted).
The Band urges that its right to occupy the reservation comes from the 1854 Treaty, rather than the state. Even if Congress may have originally recognized Band members’ residency rights separate from any state or territory, see United States v. Thomas, 151 U.S. 577, 582-85, 14 S.Ct. 426, 38 L.Ed. 276 (1894), Congress later altered the landscape. In 1868, the Fourteenth Amendment established, “All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.” U.S. Const, amend. XIV, § l.[4] In 1924, Congress conferred citizenship on all Native Americans born in the United States. Act of June 2, 1924, ch. 233, 43 Stat. 253, current version codified as 8 U.S.C. § 1401(b). Band members living on the reservation now hold full Minnesota citizenship. See Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake, Minn., 771 F.2d 1153, 1156 (8th Cir.1985). See also Goodluck v. Apache County, 417 F.Supp. 13, 16 (D.Ariz.1975), aff'd sub nom. Apache County v. United States, 429 U.S. 876, 97 S.Ct. 225, 50 L.Ed.2d 160 (1976) (mem.).
A proviso to the 1924 Act states that “the granting of such citizenship shall not in any manner impair or otherwise affect the right of any Indian to tribal or other property.” Act of June 2, 1924, ch. 233, 43 Stat. 253, current version codified as 8 U.S.C. § 1401(b). In the dissent’s view, this “decoupled Indians’ taxation status from their citizenship.” Infra at 854. The history of Native American citizenship reveals a different Congressional intent. Some prior naturalization laws had required Native Americans to abandon their tribal connections. See, e.g., Elk v. Wilkins, 112 U.S. 94, 105, 5 S.Ct. 41, 28 L.Ed. 643 (1884); Oakes v. United States, 172 F. 305, 308 (8th Cir.1909). “Originally, the test of the right of individual Indians to share in tribal lands, like the Chippewa reservations in Minnesota, was existing membership in the tribe, and this was true of all tribal property.” Id. at 307. The inclusion of tribal property provisos in citizenship laws showed “a settled and persistent purpose on the part of Congress so to broaden the original rule respecting the right to share in tribal property as to place individual Indians who have abandoned tribal relations ... upon the same footing, in that regard, as though they had maintained their tribal relations.” Id. at 308-09. In becoming United States and Minnesota citizens, Band members kept their pre-existing right to tribal and other property. The proviso does not create a tax exemption.
Because citizenship provides a constitutional nexus, Minnesota’s taxation complies with due process.
*852 The taxation must clear a second barrier. Federal law generally provides for “tax immunity of reservation Indians ... premised on the preemption of state laws by treaty and statute and informed by notions of tribal self government.” United States ex rel. Cheyenne River Sioux Tribe v. South Dakota, 105 F.3d 1552, 1559 (8th Cir.1997). Absent Congressional authorization, a state may not “tax a reservation Indian for income earned exclusively on the reservation.” McClanahan v. Ariz. State Tax Comm’n, 411 U.S. 164, 168, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973). However: “Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the state.” Mescalero Apache Tribe v. Jones, 411 U.S. 145, 148-49, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973) (citations omitted). The Band does not identify any specific federal statute preempting the taxation of pensions. Cf 4 U.S.C. § 114(a) (“No State may impose an income tax on any retirement income of an individual who is not a resident or domiciliary of such State (as determined under the laws of such State).”)
The facts here lie between McClanahan, involving only on-reservation activity, and Mescalero Apache Tribe, involving operation of a ski resort within the taxing state but off the reservation. See McClanahan, 411 U.S. at 165-66, 93 S.Ct. 1257; Mescalero Apache Tribe, 411 U.S. at 146, 93 S.Ct. 1267. McClanahan limits itself, referring to Mescalero Apache Tribe as governing taxation of off-reservation activity:
Nor, finally, is this a case where the State seeks to reach activity undertaken by reservation Indians on nonreservation lands. See, e.g., Mescalero Apache Tribe v. Jones, ante, p. 145 [93 S.Ct. 1267]. Rather, this case involves the narrow question whether the State may tax a reservation Indian for income earned exclusively on the reservation.
McClanahan, 411 U.S. at 168, 93 S.Ct. 1257. See also Okla. Tax Comm’n v. Chickasaw Nation, 515 U.S. 450, 464, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995) (“the rule that Indians and Indian tribes are generally immune from state taxation, McClanahan v. Arizona Tax Comm’n, ... does not operate outside Indian country”), citing Okla. Tax Comm’n v. Sac & Fox Nation, 508 U.S. 114, 123-26, 113 S.Ct. 1985, 124 L.Ed.2d 30 (1993).[5]
The Band attempts to confine Mes-calero Apache Tribe’s principle of taxability, emphasizing that the ski resort there, while off-reservation, had a nexus with the taxing state. Yet “ ‘[fjederal courts ... are not free to limit Supreme Court opinions precisely to the facts of each case. Instead, federal courts are bound by the Supreme Court’s considered dicta almost as firmly as by the Court’s outright holdings ....’” Jones v. St. Paul Cos., 495 F.3d 888, 893 (8th Cir.2007), quoting City of Timber Lake v. Cheyenne River Sioux *853 Tribe, 10 F.3d 554, 557 (8th Cir.1993) (further quotation marks and citations omitted).
The dissent reads Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998), as narrowing Mescalero Apache Tribe. See infra at 855-57. In passing, Kiowa Tribe states the holding of Mescalero Apache Tribe as: “a State may have authority to tax or regulate tribal activities occurring within the State but outside Indian country.” Kiowa Tribe, 523 U.S. at 755, 118 S.Ct. 1700, citing Mescalero Apache Tribe, 411 U.S. at 148-49, 93 S.Ct. 1267; Organized Vill. of Kake v. Egan, 369 U.S. 60, 75, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962). However, applying Mescalero Apache Tribe to narrower contexts does not limit its application to broader ones. The Kiowa Tribe opinion does not disclaim or qualify the principle of Mescalero Apache Tribe, and this court may not read between the lines in an attempt to do so. See generally Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (“the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions”).
The dissent also cites an Indian law treatise’s conclusion that “a state may not collect income tax from tribal members who reside in Indian country but earn income outside the state’s boundaries.” Infra at 856, citing Cohen’s Handbook of Federal Indian Law § 8.03[l][b], p. 695 (Neil Jessup Newton et al. eds., 2005). The treatise relies on Lac du Flambeau Band of Lake Superior Chippewa Indians v. Zeuske, 145 F.Supp.2d 969 (W.D.Wis.2000). See id. n. 207. The Lac du Flam-beau Band case dealt with a Wisconsin reservation resident earning out-of-state income. Lac du Flambeau Band 145 F.Supp.2d at 971-72. The district court there held that “Congress has never authorized the states to tax tribal members living on reservations,” and “the state cannot use as a reason to tax a residence that it has not provided.” Id. at 976-77. Mescalero Apache Tribe works from the opposite premise: “Absent express federal law to the contrary,” states may tax off-reservation income. Mescalero Apache Tribe, 411 U.S. at 148-49, 93 S.Ct. 1267 (citations omitted). To the extent Lac du Flambeau Band rests on due process grounds, state citizenship suffices in light of the Fourteenth Amendment and the 1924 Act.
In this case, Minnesota is taxing income from outside Indian country. The McCla-nahan rule applies only to a limited category of income, variously described as “wholly from reservation sources,” “earned exclusively on the reservation,” and “generated on reservation lands.” McClanahan, 411 U.S. at 165, 168, 181, 93 S.Ct. 1257. This case is controlled by the general rule: “Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the state.” See Mescalero Apache Tribe, 411 U.S. at 148-49, 93 S.Ct. 1267 (citations omitted). Minnesota’s taxation is not preempted.
⅜ ⅜ ⅜ ⅜ ⅝ ⅜
The judgment of the district court is affirmed.

. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

. The Tax Injunction Act, 28 U.S.C. § 1341, does not bar the Band's suit. See Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation, 425 U.S. 463, 474-75, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976).

. As the dissent notes, the Fourteenth Amendment mentions "Indians not taxed.” See infra at 854, citing U.S. Const, amend. XIV, § 2. This phrase concerns who is counted for purposes of Congressional apportionment. See Lazore v. Comm’r, 11 F.3d 1180, 1188 (3d Cir.1993).

. The dissent emphasizes this court's observation that reservation-residing Native Americans are not subject to "municipal civil regulatory control." Shakopee Mdewakanton Sioux Cmty., 771 F.2d at 1157, citing Bryan v. Itasca County, Minn., 426 U.S. 373, 388, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976) (reservation Native Americans are not subject to “the full panoply of civil regulatory powers ... of state and local governments”) (footnote omitted). As Shakopee Mdewakanton Sioux Community’s principal authority states, “McCla-nahan held that Arizona was disabled in the absence of congressional consent from imposing a state income tax on the income of a reservation Indian earned solely on the reservation.” Bryan, 426 U.S. at 377, 96 S.Ct. 2102. This confirms the general rule that Native Americans receiving off-reservation income are subject to non-discriminatory state taxation. See Mescalero Apache Tribe, 411 U.S. at 148-49, 93 S.Ct. 1267.