MURPHY, Circuit Judge,
dissenting.
I respectfully dissent, for the majority has failed to give full consideration to all relevant Supreme Court precedent and other authority which supports the Band’s position in this case.
Charles Diver, the subject of the Band’s case, wras born on the Fond du Lac Reservation in a hospital administered by the Bureau of Indian Affairs. Diver moved to Ohio in 1960 under the federal Indian relo *854 cation program. That program was part of an era of federal Indian policy which terminated recognition of certain tribes and “progressively decreased” Indian programs other than relocating individual Indians off reservations. F. Cohen, Handbook of Federal Indian Law, § 1.06, pp. 91-92 (2005). Many tribal members “were pressured to ... relocate to urban areas.” Sioux Tribe of Indians v. United States, 1 Cl.Ct. 468, 477 n. 8 (1985).
Although many Indians who relocated lived in poverty and isolation, Cohen, § 1.06, p. 93, Diver found work in Ohio as a dockworker. He worked there for thirty years, earning a pension through a union plan based in Illinois. Upon retirement in 1998, Diver returned to the Fond du Lac Reservation where he still lives. It does not appear that Diver has ever worked in Minnesota or lived anywhere in the state other than the reservation. Nevertheless, he paid Minnesota taxes on his pension for ten years before the Band brought this action on his behalf. The Band asserts that Minnesota lacks authority to tax Diver’s pension income generated by his thirty years of labor in Ohio.
While citing general principles permitting taxation of state residents consistent with due process and of income earned by Indians working outside the reservation but within the state, the majority overlooks significant limitations to those principles when a state’s right to tax conflicts with recognized rights of Indian citizens. It acknowledges that “Congress may have originally recognized [Fond du Lac] Band members’ residency rights separate from any state or territory.” Congress certainly did so, since it set aside land for the tribe’s use four years before approving statehood for Minnesota. See Treaty with the Chippewa, 10 Stat. 1109 (1854); Minnesota Enabling Act, 11 Stat. 285 (1858). Unlike other Minnesota citizens, Band members’ rights of occupancy derive from that treaty, not from the state. United States v. Thomas, 151 U.S. 577, 582-85, 14 S.Ct. 426, 38 L.Ed, 276 (1894).
Tribal members living on the reservation are United States citizens. In extending citizenship broadly, the Fourteenth Amendment excluded only “Indians not taxed,” U.S. Const, amend. XIV, § 2; Goodluck v. Apache, County, 417 F.Supp. 13, 15 (D.Ariz.1975), aff'd, 429 U.S. 876, 97 S.Ct. 225, 50 L.Ed.2d 160 (1976). Congress extended citizenship to all Indians in 1924, including those taxed, but included an important caveat which is significant here:
The following shall be nationals and citizens of the United States at birth: ... a person born in the United States to a member of an Indian ... tribe: Provided, That the granting of citizenship under this subsection shall not in any manner impair or otherwise affect the right of such person to tribal or other property-
8 U.S.C. § 1401(b).
The majority concludes that § 1401(b) “altered the landscape” to create a constitutional nexus between state taxation and reservation Indians, but “conferring rights and privileges on ... Indians cannot affect their [taxation] situation, which can only be changed by treaty stipulation, or a voluntary abandonment of their tribal organization.” McClanahan v. State Tax Comm’n of Ariz., 411 U.S. 164, 173 n. 12, 93 S.Ct. 1257 (internal punctuation omitted). Section 1401(b) in fact decoupled Indians’ taxation status from their citizenship, and a state may not deny an on reservation tribal member voting rights and equal protection even if that member does not pay state taxes. Goodluck, 417 F.Supp. at 16. Issued by a three judge panel and summarily affirmed by the Supreme Court, Goodluck undermines the majority’s position because it held that Congress could *855 and did extend citizenship to Indians without increasing states’ ability to tax them. Id.
In citing Shakopee Mdewakanton Sioux Community v. City of Prior Lake, Minnesota, 771 F.2d 1153, 1156 (8th Cir.1985), for the proposition that “[b]and members living on the reservation now hold full Minnesota citizenship,” the majority opinion conflicts with significant aspects of that decision. In that case we rejected the attempt by the city of Prior Lake to reverse its annexation of the Shakopee reservation and to exclude reservation residents from municipal elections and services. Id. at 1159. We confirmed that Shakopee reservation “residents would be entitled to the benefits of citizenship in Prior Lake” even though the city could not “subject Reservation residents to municipal taxes or ordinances.” Id. at 1157, 1159. Any failing to distinguish between the protections and the obligations of citizenship is not consistent with the principles enunciated in Shakopee and in Good-luck.
The Supreme Court has not directly defined what nexus would allow state taxation of a tribal member living on a reservation in order to comply with due process. The Court has indicated, however, that more of a nexus is required for taxing such tribal members than for taxing non Indians or for off reservation Indians. For example, the Court has held that a state may tax on reservation cigarette purchases by non tribal members, Washington v. Confederated Tribes of the Colville Indian Reservation, 447 U.S. 134, 159, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980), but not by tribal members, Moe v. Confederated Salish & Kootenai Tribes, 425 U.S. 463, 477, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976), even though those members are state citizens.
Justice Rehnquist wrote separately in Colville, pointing out that the state’s attempt to tax on reservation sales raised issues of “not only Indian sovereignty, but also necessarily state sovereignty.” 447 U.S. at 181, 100 S.Ct. 2069. He concluded that “the State, by taxing its own non-Indian residents, has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred.” Id. at 182, 100 S.Ct. 2069 (emphasis added and internal punctuation omitted). He did not claim that due process allows state taxation of reservation tribal members, who frequently receive opportunities, protection, and benefits from tribal and federal entities rather than state governments. Throughout Diver’s Minnesota citizenship, he has been an on reservation member of a tribe that today operates its own schools, transit system, public health and housing services. See www.fdlrez.com (website of the Fond du Lac tribal government). The majority has in effect “confused [Supreme Court] cases about state taxation of non-Indians with those about state taxation of Indians.” See Okla. Tax Comm’n v. Chickasaw Nation, 515 U.S. 450, 459 n. 8, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995).
The majority’s analysis of federal Indian law is incomplete. It does recognize that “tax immunity of reservation Indians [is] ... informed by notions of tribal self-government.” United States ex rel. Cheyenne River Sioux Tribe v. South Dakota, 105 F.3d 1552, 1559 (8th Cir.1997). The Court made clear in McClanahan v. State Tax Commission of Ariz., 411 U.S. 164, 167, 93 S.Ct. 1257, that a state may not tax income earned on the reservation by a tribal member who lives there. And on the same day it decided Mescalero Apache Tribe v. Jones, 411 U.S. 145, 148-49, 93 S.Ct. 1267, approving the taxation of income from a tribally operated ski resort located within the taxing state but outside the reservation. Although it recognizes that the facts of the Band’s ease “lie between” those in McClanahan and Mescalero, the majority *856 would limit McClanahan to its facts while overlooking the significant distinction between Diver’s income and that taxed in Mescalero where the tribe was operating a lucrative business off the reservation but within the taxing state.
There is no indication from the Supreme Court that it would apply Mescalero to out of state activity. In fact, Kiowa Tribe v. Manufacturing Technologies, Inc., 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998), cited Mescalero for the principle that a state “may tax ... tribal activities occurring within the State but outside Indian country” (emphasis added). In the case before our court the majority states that we “are bound by the Supreme Court’s considered dicta almost as firmly as [its] outright holdings,” Jones v. St. Paul Cos., 495 F.3d 888, 893 (8th Cir.2007), yet it dismisses Kiowa Tribe’s on point characterization of Mescalero. In Kiowa, Tribe the Court explicitly characterized Mescalero as applying to within state activity. No published case has applied Mescalero in any other context. Nevertheless, the majority suggests that Mescalero “directly controls” here despite having acknowledged that our case “lie[s] between” Mescalero and McClanahan.
One federal court has previously decided almost the exact issue before us. It ruled in favor of the Lac du Flambeau Band after fully considering the applicable precedent. Lac du Flambeau Band of Lake Superior Chippewa Indians v. Zeuske, 145 F.Supp.2d 969 (W.D.Wis.2000). In Zeuske, Wisconsin attempted to tax the income of a tribal member who lived on a reservation within the state but who earned his income from work in Minnesota. The district court observed that the Supreme Court had “categorical[ly]” rejected taxes whose legal incidence falls on tribal members living on the reservation absent explicit Congressional authorization. Id. at 976 (citing Chickasaw Nation, 515 U.S. at 459, 115 S.Ct. 2214). In Chickasaw Nation, the Court “accordfed] due deference to the lead role of Congress in evaluating state taxation as it bears on Indian tribes and tribal members.” 515 U.S. at 459, 115 S.Ct. 2214. Since Congress had not authorized the tax Wisconsin imposed, the court enjoined its collection. Id. at 977. The state did not appeal. The Zeuske court did what should be done here, for it considered how due process tax doctrine and federal Indian law interact rather than viewing each in isolation. In its ongoing review of developments in Indian law, the leading treatise endorsed the reasoning and conclusions of the Zeuske court. Cohen, § 8.03[l][b], p. 695. The majority rejects both in favor of an over-broad application of Mescalero.
When due process and tribal sovereignty principles are considered together, the weakness in Minnesota’s position becomes clear. Diver has never earned income while working off the reservation as a citizen of Minnesota. His pension was earned entirely in the state of Ohio, where he lived and worked for thirty years. Minnesota could not have taxed his wages as he received them because the state did not have the required nexus. Now that Diver has retired and returned to the Fond du Lac reservation, tribal sovereignty precludes Minnesota from imposing a tax on a pension earned during thirty years of work in Ohio. Just as Minnesota could not tax Diver’s preretirement Ohio wages simply because he now resides on a reservation located in the state, the same is true for the pension tied to those wages. His situation is not at all similar to that in Mes-calero, where Indians were taxed on income generated by an off the reservation ski resort they ran within the state. 411 U.S. at 146, 93 S.Ct. 1267. There, the resort’s operation was earning income for the Indians from a business based in that state. Here, Diver’s pension funds earned *857 in Ohio are directed to him from Illinois for his retirement on the Fond du Lac Reservation.
For the foregoing reasons I dissent.